IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| LEWIS L. SEAL, | ) | Civil No. 07-1382-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

David B. Lowry
9900 SW Greenburg Road
Columbia Business Center, Suite 235
Portland, OR 97223
        Attorney for Plaintiff

Karin J. Immergut
U.S. Attorney
Britannia I. Hobbs
Asst. U.S. Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

FINDINGS AND RECOMMENDATION - 1

David F. Morado
Regional Chief Counsel
Stephanie R. Martz
Special Asst. U.S. Attorney
Office of General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075
        Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Lewis Seal brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Disability Insurance Benefits. The decision of the Commissioner should be reversed, and this action should be remanded for an award of benefits.


**<u>Procedural Background</u>**

Plaintiff filed an application for Supplemental Security Income (SSI) benefits on October 2, 2001, and filed an application for Disability Insurance Benefits (DIB) on November 16, 2001. In those applications, plaintiff alleged that he had been disabled since December 30, 1995, because of musculoskelatal problems, including ankle and right and left knee surgeries; thoracic and cervical soft tissue damage; and right shoulder surgeries.

On September 11, 2003, after his applications were denied initially and upon reconsideration, plaintiff filed a timely request for a hearing before an Administrative Law Judge (ALJ).

A hearing was held on March 2, 2005, before Administrative Law Judge (ALJ) Thomas Tielens. Plaintiff, his wife, and a Vocational Expert (VE) testified at the hearing.

On April 1, 2005, ALJ Tielens issued a decision finding that plaintiff was not disabled within the meaning of the Social Security Act (the Act). That decision became the final decision of the Commissioner on February 10, 2006, when the Appeals Council denied plaintiff's request for review.

Plaintiff challenged the Commissioner's decision in an action filed in this court on April 7, 2006. Based upon the parties' stipulation, in an Order dated February 5, 2007, the Honorable Garr King remanded the action to the Commissioner. The Order instructed the Appeals Council to issue a fully favorable decision on plaintiff's SSI claim. As to the DIB claim, the Order required the ALJ, on remand, to address the medical opinions of the State Agency reviewing physicians, to obtain supplemental evidence from a vocational expert, and to base his residual functional capacity finding on his evaluation of the evidence, and not on any presumption of a finding applicable to a later period.

On remand, Charles Evans, a different ALJ, evaluated plaintiff's claim for DIB. A hearing was held before ALJ Evans July 25, 2007. Plaintiff, plaintiff's son, a Medical Expert (ME), and a VE testified at the hearing.

In a decision filed on July 18, 2007, ALJ Evans issued a "partially favorable" decision. The ALJ found that plaintiff was disabled as of June 20, 2000, when he became 50 years old, and accordingly was entitled to receive SSI payments based upon his October, 2001 application for SSI benefits. He found that plaintiff was not disabled within the meaning of the Act on or before December 31, 1997, the date he was last insured for Disability Insurance Benefits. Accordingly, he denied plaintiff's application for those benefits.

Plaintiff did not seek the Appeals Council's review of the ALJ's July 18, 2007 decision, and that decision became the final decision of the Commissioner.  On September 17, 2007, plaintiff filed the present action, in which he challenges the denial of his application for DIB.  He does not challenge the Commissioner's decision as to his entitlement of SSI benefits.  For purposes of the present appeal, the period at issue is the time between plaintiff's alleged onset of disability on December 30, 1995, and December 31, 1997, the last date on which plaintiff was insured for DIB purposes.

**Factual Background**

Plaintiff was born on June 20, 1950.  He was 45 years old at the time of his alleged onset of disability, and was 47 years old at the end of 1997, when he was last insured for disability benefits.  Plaintiff has a high school education, and attended college part-time for several years.  He has past relevant work as a truck driver and as a rock crusher operator.  He has not worked since November, 1995.

**Medical Record**

Plaintiff was treated at the Portland Orthopedic Clinic from January 23, 1996, through October 27, 1999.  In a report dated April 9, 1997, Dr. Raymond North, plaintiff's treating physician, stated that plaintiff's left knee had been injured in an industrial accident in November, 1995, and that an arthroscopy performed on September 26, 1996, had revealed chondromalacia of the patella, which was debrided.  Dr. North indicated that plaintiff had continued to experience pain and swelling with increased activity.  Dr. North opined that plaintiff's left knee was medically stationary, and that plaintiff had a "mild amount of partial

FINDINGS AND RECOMMENDATION - 4

permanent physical impairment."  He further opined that plaintiff could do light or sedentary work.  On October 27, 1999, Dr. William Carr, another physician at the Portland Orthopedic Clinic, indicated that plaintiff was unable to work, and opined that it was unlikely that plaintiff would be able to return to work as a truck driver.

Plaintiff was examined by Dr. William Ferguson on February 10, 1997.  Dr. Ferguson reported that it appeared that another doctor had returned plaintiff to light duty work, but that plaintiff thought that he was unable to return to work as a truck driver.  Dr. Ferguson noted that plaintiff had had previous arthroscopic surgery, and reported that his "ranges and motion are essentially unremarkable."  He opined that any chronic disability that plaintiff experienced "would be from pain only," and that plaintiff "would do better in a sedentary job, not returning to heavy work in a heavy construction industry."  Dr. Ferguson added that he thought that "driving would be appropriate, although perhaps use of clutch might be inappropriate, and he may need an automatic or some other accommodation."

Between March 10, 1999, and March 21, 2000, plaintiff underwent surgical procedures for esophigitis and for knee and shoulder problems.  Arthroscopic surgery with open Fulerson procedure was performed on plaintiff's left knee on March 11, 1999, to address degenerative joint disease.  A laparoscopic procedure was performed on July 19, 1999, for reflux esophigitis.  A surgical procedure was performed on plaintiff's left knee on September 9, 1999, to remove hardware implants.  On October 29, 1999, plaintiff underwent a surgical anterior interbody fusion and had a Marcaine anesthesia pump implanted for relief of back pain at L4-L5 caused by degenerative disc disease.  Surgery was performed on plaintiff's right shoulder on March 21, 2000, to repair a partial tear of the rotator cuff with impingement.  Plaintiff continued to experience pain and loss of range of motion following

this surgery, and a second surgery was performed to remove a spur and for decompression in the right shoulder on September 14, 2000.

Plaintiff established care at the Richmond Family Health Center (RFHC) on August 25, 1998, where he was primarily treated by Dr. Jonathan Lindgren. In a note dated August 22, 2000, Dr. Lindgren stated that plaintiff had been under his care for "a variety of musculo skeletal problems," and that plaintiff had a "limited ability to do physical work at this time, and may not have much improvement in the future." [Emphasis in original.]

Between August 25, 1998, and December 12, 2001, plaintiff was treated for chronic pain, GERD, hypertension, and obesity at the OHSU Hospital in Portland.

In a letter dated June 17, 2002, plaintiff's counsel asked Dr. Lindgren to complete an enclosed form entitled "Medical Opinion Re: Ability to Do Work-Related Activities." The form was completed instead by Dr. Gideonse, who was not plaintiff's treating physician, based upon examination of plaintiff and review of his records at RFHC. Dr. Gideonse reported that plaintiff had been treated for lumbar disc disease, radiculopathy of lower extremity, thecal scarring, and nephritic syndrome for more than four years. He listed plaintiff's symptoms as pain, weakness, fatigue, and numbness, and stated that the side effects of medications prescribed included drowsiness from narcotics and obesity caused by Prednisone. Dr. Gideonse diagnosed depression, and indicated that plaintiff had the following limitations:

-Ability to stand/walk limited to 3 hours per day; sitting limited to 3 hours per day;

-Alternate between sitting and standing every 20 minutes; needs to walk for 5 minutes every 90 minutes;

-Will need to lie down for 1-2 hours at unpredictable intervals during a work shift;

-Can never crouch; and can only rarely twist, stoop, or climb ladders;

-Can only occasionally climb stairs;

-Can occasionally lift/carry up to 10 pounds, rarely lift up to 20 pounds, never lift 50 pounds;

-Must avoid all hazards such as machinery and heights because of medications;

-May be absent more than 4 times per month because of impairments;

-Has substantial difficulties with stamina, pain or fatigue if working full time;

-Health problems will worsen if working full time; and

-Symptoms will frequently interfere with attention and concentration.

Dr. Gideonse opined that, because of failed back surgery and "major kidney disease," plaintiff could not perform even "low stress" jobs. He added that plaintiff had been unable to work since December, 1995.

During a consultative psychological evaluation performed on August 9, 2003, Dr. Brinda Krishnan diagnosed plaintiff with major depression. She estimated plaintiff's Global Assessment of Functioning (GAF) as 57, denoting a moderate impairment in social or occupational functioning.

Darin Brandt, D.O., performed a consultative medical examination of plaintiff on August 2, 2003. Dr. Brandt found that plaintiff experienced possible mechanical back pain and post-traumatic degenerative changes in his right ankle with decreased range of motion. He also found evidence of bilateral knee pain and right shoulder pain without present objective signs. Dr. Brandt opined that plaintiff could lift and carry 10 pounds, and could stand and walk approximately 4 hours during an 8-hour day. He stated that plaintiff should minimize stooping and crouching to avoid aggravating his knee pain, and that plaintiff had

no "manipulative limitations" or "relevant visual, communicative, or workplace environmental limitations."

### Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

### ALJ's Findings

At the first step of the disability analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity at any time since the alleged onset of his disability on December 31, 1997.

At the second step, the ALJ found that plaintiff's severe impairments included post-traumatic arthritis in the left knee, lumbar degenerative disc disease, depression, and residuals of an old right ankle and knee injury.

At the third step, the ALJ found that plaintiff's severe impairments did not meet or equal any impairment listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  Accordingly, he proceeded to the analysis under Step Four.  20 C.F.R. § 404.1520(d).

At the fourth step, the ALJ found that plaintiff could not perform any of his past relevant work.

At the fifth step, the ALJ observed that, "before June 20, 2000, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that claimant is 'not disabled,' whether or not the claimant has transferable job skills.  Beginning on June 20, 2000, the claimant has not been able to transfer any job skills to other occupations . . . ."

The ALJ noted that the VE had testified that plaintiff "has no skills that would transfer within the ambit of his residual functional capacity."  He found that, before plaintiff became 50 years old on June 20, 2000, he was capable of performing a number of jobs that exist in substantial numbers in the national economy, including work as a small product assembler, a parking lot cashier, and a packager/sorter.  The ALJ further found that, as of June 20, 2000

> the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are not a significant number of jobs in the national economy that the claimant could perform . . . .

Accordingly, he found that plaintiff was disabled at that time "by direct application of Medical-Vocational Rule 201.06."  Because plaintiff was not found to be disabled by the time his insured status expired on December 31, 1997, the ALJ concluded that he was not entitled to receive any DIB payments, but that he was entitled to receive supplemental security income payments as of June 20, 2000.

In reaching the conclusion that plaintiff was not disabled before his insured status expired, the ALJ found that plaintiff's description of his symptoms and impairments was not wholly credible.  He also found that the testimony of lay witness Mark Seal, plaintiff's son, was not entitled to "significant weight."

**Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether

it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d

771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if

"the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at

1039-40.


### Discussion

The question presented on this appeal is whether the Commissioner's conclusion that

plaintiff was not disabled before the expiration of his insured status is supported by

substantial evidence in the record and is not based upon legal error.

Plaintiff contends that the Commissioner's decision should be reversed because:

1) the ALJ improperly rejected the opinion of Dr. Gidoense; 2) the ALJ erred in finding that

plaintiff's description of his symptoms and impairments was not wholly credible; 3) the ALJ

erred in his analysis of third-party lay witness testimony; 4) the ALJ's finding that plaintiff

could perform jobs that existed in substantial numbers in the national economy was based

upon an incomplete hypothetical, and 5) inaudible gaps in the hearing transcript make it

impossible to determine the medical expert's opinion as to plaintiff's impairments "as they

existed in 1996 prior to his DLI [date last insured.]"


1.  Rejection of Opinion of Dr. Gideonse

As noted above, on a medical questionnaire that plaintiff's counsel sent to

Dr. Lindgren, one of plaintiff's treating physicians, Dr. Gideonse indicated that plaintiff had

significant limitations and opined that, because of failed back surgery and "major kidney

FINDINGS AND RECOMMENDATION - 12

disease," plaintiff could not perform even "low stress" jobs.  He also opined that plaintiff had

been unable to work since December, 1995.  Dr. Gideonse indicated that his conclusions

were based upon an examination of plaintiff, a review of the records, and additional history

obtained from plaintiff.

In concluding that plaintiff was not disabled before his insured status expired, the

ALJ rejected Dr. Gideonse's opinion as to the severity of plaintiff's impairments.  In support

of that rejection, the ALJ noted that the medical record included no treating records from

Dr. Gideonse, and that plaintiff testified that he did not recall being treated by him.  Though

it appears that Dr. Gideonse was an "examining" rather than "treating" medical source, the

ALJ concluded that, even if he was a treating physician, his opinions were not entitled to

"significant weight" for several reasons.  The ALJ stated that the "attorney-created, goal

directed, check-the-box, fill in the blank form . . . contains no real description of medical

findings and is merely brief and conclusory in form."  He asserted that Dr. Gideonse "did not

provide objective evidence to substantiate his opinion or even explain how the claimant's

impairment limited his ability to lift and carry, to sit, stand and walk, to perform postural or

manipulative tasks or to fulfill the basic mental demands of competitive, remunerative,

unskilled work."  The ALJ also stated that the form used was "less than accurate" because

"[f]or example, it attributes permanent limitations due to the use of Prednisone when, in fact,

Prednisone was used only for a short time and event [sic] the claimant recognized these

limits no longer exist."

Plaintiff contends that the ALJ failed to provide the required support for his rejection

of Dr. Gideonse's opinion.  I agree.  Dr. Gideonse is probably most accurately characterized

as an "examining" medical source.  Opinions of examining physicians are entitled to greater

weight than are those of nonexamining physicians. <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, <u>id.</u>, and must provide specific and legitimate reasons, which are supported by substantial evidence in the record, for rejecting an examining physician's opinion that is contradicted by another physician. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995).

       To the extent that Dr. Gideonse may have considered plaintiff's impairments to be more severe than did some other medical sources, the ALJ was required to provide specific and legitimate reasons for rejecting his opinion. The reasons cited by the ALJ do not meet that requirement.   Though the ALJ correctly noted that Dr. Gideonse set out his opinion on a prepared form, his assertion that Dr. Gideonse did not cite objective evidence, substantiate his opinion as to the severity of plaintiffs impairments, or explain how plaintiff's impairments affected his ability to perform certain activities is not accurate. Dr. Gideonse stated that his opinion concerning plaintiff's limitations was based upon MRI findings, surgical findings, and the side effects of medication. He noted that his conclusion that plaintiff could not tolerate even a low stress job was based upon plaintiff's "failed back surgery" and major kidney disease, and identified clinical findings and objective signs that supported his finding that plaintiff experienced significant pain, weakness, fatigue, and numbness.   Dr. Gideonse's diagnosis of lumbar disc disease, nephritic disease, thecal scarring and radiculopathy were well supported by the medical record, as was his assertion that plaintiff's ability to work was affected by his use of narcotic medications to address chronic pain.

       The ALJ did not assert that Dr. Gideonse's opinions were contradicted by other medical sources in the record, or assert that he rejected Dr. Gideonse's opinions because they

were inconsistent with other medical evidence.  However, even if this examining physician's

opinions were contradicted, the ALJ was required to provide specific and legitimate reasons,

supported by substantial evidence in the record, for their rejection.  The ALJ's assertion that

Dr. Gideonse's opinions were not entitled to substantial weight because they appeared on a

form, which the ALJ characterized as "less than accurate," does not meet that requirement.

The form provided Dr. Gideonse with multiple opportunities to set forth the bases of his

conclusions, and Dr. Gideonse did so.[1]  The ALJ correctly noted that, in response to a

question about the side effects of medications that could affect the ability to work,

Dr. Gideonse indicated that Prednisone causes obesity.  However, he did not diagnose

plaintiff as obese or cite plaintiff's weight as a basis for his conclusion that plaintiff could not

perform even a "low stress" job.  The ALJ's assertion that the reference to Prednisone

rendered the form "less than accurate" is not well founded, and does not cast doubt upon

Dr. Gideonse's opinions concerning plaintiff's impairments and limitations and their effect on

his ability to work.

　　　　Where, as here, an ALJ does not provide sufficient reasons for rejecting the opinions

of treating or examining physicians, those opinions are credited "as a matter of law."  A

reviewing court then has discretion to remand for further administrative proceedings or for a

finding of disability and an award of benefits.  See, e.g., Stone v. Heckler, 761 F.2d 530, 533

(9th Cir. 1985).

---

[1]Plaintiff correctly notes that the Agency itself uses many forms that include "check off"
items.  In Crane v. Shalala, 76 F.3d 251, 253 (9th Circuit 1996), the court concluded that an ALJ
had "permissibly" rejected "check-off reports that did not contain any explanation of the bases
of their conclusions."  However, it appears that the form at issue in Crane differed in an
important way from that completed by Dr. Gideonse.  Though Dr. Gideonse completed a form
that included a number of "check-off" items, he also set out the bases for his conclusions.

Whether an action is remanded for an award of benefits for further proceedings depends on the likely utility of additional proceedings. Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000). A reviewing court should credit evidence and remand for a finding of disability and an award of benefits if: 1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; 2) there are no outstanding issues to be resolved before a determination of disability can be made; and 3) it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence in question were credited. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

Under the guidance of these decisions, I recommend remanding this action for an award of benefits. The ALJ failed to provide legally sufficient reasons for rejecting Dr. Gideonse's opinions concerning the severity of plaintiff's impairments, and the record has been fully developed during the original assessment of plaintiff's applications for benefits and further development of the record after Judge King remanded the action with instructions to enter a fully favorable decision as to plaintiff's SSI claim and to address the medical opinions of the State Agency reviewing physicians, obtain supplemental evidence from a VE, and to reassess plaintiff's residual functional capacity based upon the evidence. If the ALJ had credited Dr. Gideonse's opinion he would have been required to find plaintiff disabled, based upon the testimony of the VE, who stated that an individual with the exertional and postural limitations assessed by Dr. Gideonse could not perform substantial gainful employment, and that an individual who misses two or more days a month would have problems sustaining competitive employment.

2. Adequacy of ALJ's Hypothetical

In order to be accurate, an ALJ's hypothetical to a VE must set out all of the claimant's impairments and limitations.  E.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (citing Baugus v. Secretary of Health and Human Services, 717 F.2d 443, 447 (8th Cir. 1983)).  The ALJ's depiction of the claimant's limitations must be "accurate, detailed, and supported by the medical record."  Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).  If the assumptions in the hypothetical are not supported by the record, a VE's opinion that a claimant can work does not have evidentiary value.  Gallant, 753 F.3d at 1456.

The hypothetical that the ALJ posed to the VE described a man of plaintiff's age, education, and work experience who could walk on a level surface for about six blocks at a time, could "be on his feet with some moving around but not traveling for about an hour," could sit for about an hour, could lift 20 pounds occasionally and 10 "not repeatedly but with frequency,"  was limited to pushing and pulling no more than 20 pounds for no more than 10 minutes at a time, had moderate impairment in ability to maintain concentration and moderate impairment in short term memory, and was "80% as good as a normal person his age."

This hypothetical omitted several significant limitations and impairments that Dr. Gideonse had identified.  Because the ALJ did not provide legally adequate support for his rejection of Dr. Gideonse's opinion as to plaintiff's functional capacity, the impairments and limitations that this examining doctor identified must be included in the assessment of plaintiff's RFC.  In the absence of those impairments and limitations in the hypothetical posed to the VE, the VE's opinion that plaintiff can perform jobs that exist in substantial numbers in the national economy lacks evidentiary value.

FINDINGS AND RECOMMENDATION - 17

3. <u>Credibility Issues and Gaps in Hearing Transcript</u>

As noted above, plaintiff contends that the ALJ erred in failing to wholly credit the testimony of plaintiff and plaintiff's son. He also contends that, if this action is not reversed and remanded for an award of benefits, it should be remanded to recall the Medical Expert who testified and obtain a transcript that does not have the gaps and unclear portions found in the transcript of plaintiff's second hearing.

It is not necessary to reach these issues, because this action should be remanded for an award of Disability Insurance Benefits for the reasons set out above. Nevertheless, I will briefly note, for the record, my agreement with plaintiff's assertion that the ALJ did not provide legally sufficient support for his rejection of the testimony of plaintiff and his son.

a. <u>Plaintiff's Testimony</u>

An ALJ is responsible for determining credibility. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995). If a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony concerning the severity of symptoms merely because it is unsupported by objective medical evidence. <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998) <u>citing</u> <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 343 (9th Cir. 1990) (<i>en banc</i>). Unless there is affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. <u>Id.,</u> <u>quoting</u> <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995).

In evaluating a claimant's credibility, the ALJ may consider: (1) ordinary methods of credibility evaluation, including the claimant's reputation for veracity, prior inconsistent statements concerning symptoms, and other testimony by the claimant that reflects upon the

claimant's credibility; (2) unexplained or inadequately explained failure to seek treatment or follow a course of treatment prescribed; (3) the claimant's daily activities; (4) objective medical evidence; (5) opinions from medical sources; (6) the location, duration, frequency, and intensity of symptoms; (7) precipitating and aggravating factors; (8) the type, dosage, effectiveness, and side effects of medications; (9) treatment other than medication; and (10) statements from the claimant and others regarding the claimant's symptoms and limitations. 20 C.F.R. § 404.1529(c); Smolen v. Chater, 80 F.3d 1273, 1284-85 (9th Cir. 1996).

In finding that plaintiff's testimony that he suffered significant symptoms and impairments was not wholly credible, the ALJ asserted that plaintiff's limited daily activities could not be "objectively verified with any reasonable degree of certainty."  He stated that it was "difficult to attribute that degree of limitation to plaintiff's medical condition, as opposed to other reasons, in view of other substantial evidence in the case record."  The ALJ stated that plaintiff had engaged in daily activities that were less limited than one would expect, given his testimony, and that plaintiff's ability to perform odd jobs, including house repair, and to attend college part time, were inconsistent with his testimony about the severity of his impairments.

In the absence of evidence of malingering, the ALJ was required to provide "clear and convincing" evidence for rejecting plaintiff's testimony.  The reasons cited do not satisfy that burden.  It is difficult to know how a claimant such as plaintiff could provide the "objectively verified" evidence of limited daily activities that would satisfy the first basis cited by the ALJ for rejecting plaintiff's testimony.  Here, plaintiff's testimony about his activities was consistent with the testimony of his son, whom the ALJ did not find to be untruthful, and was consistent with the level of activities that might be reasonably expected

from an individual with the impairments and symptoms cited in the records of treating and examining physicians.  The ALJ did not specify the "substantial evidence" in the record that he asserted supported the conclusion that plaintiff's limitations were caused by factors other than plaintiff's medical condition, or identify the "other reasons" for the limitations to which he referred.  There is no evidence in the record that the limited "odd jobs" that plaintiff performed were inconsistent with plaintiff's testimony about the severity of his limitations and impairments, and no evidence that these jobs were performed in a manner consistent with the ability to perform competitive employment.  Finally, plaintiff's ability to attend school part time is not inconsistent with his testimony about his impairments and limitations.

b.  Testimony of Plaintiff's Son

An ALJ must provide reasons that are germane for discounting the testimony of lay witnesses.  E.g., Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ noted that plaintiff's son, Mark Seal, testified that plaintiff had difficulty walking 3 blocks without resting, needed 5-10 minutes of rest after working for 10 minutes, had developed a quick temper and short-term memory problems, and "was only 70% as functional as a normal person."  The ALJ stated that there was no reason to doubt these observations concerning plaintiff's behavior.  He concluded, however, that because the witness lacked medical expertise "his opinions are of limited value in determining how the claimant's impairments affect his overall ability to perform basic work activities."  Accordingly, the ALJ did not "afford his testimony significant weight."

Plaintiff contends that his son's lack of medical training is not a legitimate basis on which to reject his testimony concerning his limitations.  I agree.  If plaintiff's son had an

adequate opportunity to observe plaintiff's behavior and there was no objective evidence that the testimony was exaggerated or untruthful, his observations were relevant and should not have been discounted.  The ALJ did not question plaintiff's son's opportunity to witness plaintiff's conduct, and did not question the truthfulness of his testimony.  Indeed, the ALJ's own RFC assessment, which described plaintiff as "80% as good as a normal person his age," was not radically different from plaintiff's son's estimation that plaintiff was "70% as functional as a normal person."

## Conclusion

For the reasons set out above, a Judgment should be entered remanding this action for an award of Disability Insurance Benefits.

## Scheduling Order

The above Findings and Recommendation are referred to a United States District Judge for review.  Objections, if any, are due October 14, 2008.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objection.  If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or the latest date for filing a response.

DATED this 26th day of September, 2008.


/s/  John Jelderks_____
John Jelderks
U.S. Magistrate Judge